**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA**

MICHAEL J. MAINARDI, GERARD N.
MAINARDI, and LIGHTHOUSE
STRATEGIC PROJECTS GROUP, INC.,        CIVIL ACTION NO. 08-cv-3605

        Plaintiffs,
        v.

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

        Defendant.

---

**DEFENDANT THE PRUDENTIAL INSURANCE COMPANY OF AMERICA'S BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A
CLAIM UPON WHICH RELIEF MAY BE GRANTED**

---

**WONG FLEMING, P.C.**
821 Alexander Road
Suite 150, PO Box 3663
Princeton, New Jersey 08543
Telephone: (609) 951-9520
Facsimile: (609) 951-0270
Attorneys for Defendant
The Prudential Insurance
Company of America

Of Counsel:    Daniel C. Fleming, Esq.
On the Brief:  Daniel C. Fleming, Esq.
              Mark Thompson, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................... iv

PRELIMINARY STATEMENT ....................................... 1

PROCEDURAL HISTORY .......................................... 2

FACTUAL ALLEGATIONS AS PLEADED IN COMPLAINT ................ 2

ARGUMENT ................................................... 5

I.    STANDARD OF REVIEW .................................. 5

II.   PLAINTIFFS' CLAIMS FOR COPYRIGHT
      INFRINGEMENT FAIL TO STATE A CLAIM UPON
      WHICH RELIEF MAY BE GRANTED ........................ 7

   A. Plaintiffs' Complaint Does Not Allege
      Infringement of "Original" Elements
      Protected by the Copyright Act .................... 8

      1.   The majority of Plaintiffs'
           copyright allegations pertain to
           functional elements of their
           product that are not protected by
           the Copyright Act. ......................... 10

      2.   Plaintiffs seek copyright
           protection for elements that are
           the exclusive province of patent
           law. ...................................... 13

      3.   Plaintiffs' allegations of
           "substantial similarity" between
           the verbiage of the online
           brochures and vignette dialogue
           are of only marginal importance to
           Plaintiffs' Complaint ..................... 13

   B. Plaintiffs' Complaint Fails to Allege
      Facts Supporting the Allegation That
      Defendant's Products Contain
      "Substantially Similar" Verbiage or
      Dialogue.......................................... 14

i

III. ALL OF PLAINTIFFS' STATE LAW CLAIMS FAIL TO
     STATE A CLAIM FOR WHICH RELIEF CAN BE
     GRANTED ......................................... 16

  A. All of the state law claims are preempted
     by federal law................................... 16

  B. The Plaintiffs have failed to properly
     plead the State Law Claims....................... 18

     1.    Plaintiffs' Complaint fails to
           state a claim for breach of
           contract .................................. 19

        a. The Complaint fails to allege the
           existence of a valid agreement. ........... 19

        b. The Complaint provides no basis to
           conclude Prudential infringed
           upon Plaintiffs' ownership
           interests. ................................ 20

        c. The breach of contract allegations
           are prohibited "formulaic
           recitations." ............................. 21

     2.    Plaintiffs' Allegations of
           Misappropriation of trade secrets
           fails to state a claim upon which
           relief may be granted ..................... 22

        a. There is no trade secret ................. 22

        b. There is no confidentialrelationship ...... 25

        c. There is no harm .......................... 25

     3.    Plaintiffs' allegations of unfair
           competition fail to state a claim
           upon which relief may be granted .......... 26

     4.    Plaintiffs' allegations of
           interference with prospective
           contractual relations fail to
           state a claim upon which relief
           may be granted ............................ 28

a.    There are no "prospective contractual relations." ..................... 28

b.    Prudential was privileged to engage in the actions alleged by the Plaintiffs. ........................... 30

CONCLUSION ............................................... 34

### TABLE OF AUTHORITIES

**Cases**

Advent Sys. v. Unisys Corp., 925 F.2d 670,
  673 (3d Cir. 1991) .................................. 31, 33

Atari, Inc. v. North American Phillips
  Consumer Electronics Corp., 672 F.2d 607,
  619 (7th Cir. 1982) ...................................... 14

Bell Atlantic Corp. v. Twombly, 127 S. Ct.
  1955, 1964 (2007) ................................... passim

Block v. Blakely, 2004 U.S. Dist. LEXIS
  16920, at *6 (E.D. Pa. Aug. 24, 2004) .................. 25

Bonito Boats, Inc. v. Thunder Craft Boats,
  Inc., 489 U.S. 141, 150 (1989) ................. 13, 17, 27

Branch v. Tunnell, 14 F.3d 449, 453 (9th
  Cir. 1994) and Federal R. Evidence 201) ................ 25

Diamond Triumph Auto Glass, Inc. v.
  Satellite Glass Corp., 441 F. Supp. 2d 695,
  716 (M.D. Pa. 2006) ................................... 29

Feist Publications, Inc. v. Rural Telephone
  Svcs., Inc., 499 U.S. 340, 361 (1991) ................... 7

In re Burlington Coat Factory Sec. Litig.,
  113 F.3d 1410, 1434 (3d Cir. 1997) .................... 32

In re Rockefeller Ctr. Props., Inc. Secs.
  Litig., 311 F.3d 198, 215 (3d Cir. 2002) ............... 6

Kachmar v. Sungard Data Sys., 109 F.3d 173,
  184 (3d Cir. 1997) ................................... 28

Kepner-Tregoe, Inc. v. Carabio, 203 U.S.P.Q.
  (BNA) 124, *34 (E.D. Mich. 1979) ................... 11, 12

Kregos v. Associated Press, 3 F.3d 656, 666
  (2d Cir. 1993) ....................................... 18

Meissner Chevrolet Geo-Oldsmobile, Inc. v.
  Rothrock Chevrolet, Inc., 2007 U.S. Dist.
  LEXIS 78744, at *8 (E.D. Pa. Oct. 24, 2007) ........... 29

Moore v. Kulicke & Soffa Indus., Inc., 318
  F.3d 561, 566 (3d Cir. 2002) ............................ 22

Phillips v. County of Allegheny, 515 F.3d
  224, 233 (3d Cir. 2008) .............................. 5, 6

Phillips v. Murdock, 543 F. Supp.2d 1219,
  1226 (D. Haw. 2008) ................................ 10, 16

Prudential v. Stella, 994 F. Supp. 318, 323
  n. 2 (E.D. Pa. 1998) ................................... 23

Schulman v. J.P. Morgan Inv. Management, 35
  F.3d 799, 809 (3d Cir. 1994) ........................... 30

Shane v. Fauver, 213 F.3d 113, 115 (3d Cir.
  2000) .................................................. 31

Stromback v. New Line Cinema, 384 F.3d 283,
  305 (6th Cir. 2004) .................................... 23

Whelan Assoc., Inc. v. Jaslow Dental
  Laboratory, Inc., 797 F.2d 1222, 1234 (3d
  Cir. 1986) ............................... 7, 10, 11, 12,15

Zella v. E.W. Scripps Co., 529 F. Supp.2d
  1124, 1127 (C.D. Cal. 2007) ........................... 25

**Statutes**

15 U.S.C. § 102(b) ............................... 8, 10, 13

15 U.S.C. § 1125(a) ...................................... 27

17 U.S.C. § 301(a) ....................................... 18

Fed. R. Civ. P. 8(a)(2) ................................... 6

Fed. R. Civ. P. 12(b)(6) ........................... 1, 5, 34

Fed.R. Civ. P. 15(a) ..................................... 31

**Constitutional Provisions**

U.S. Const. Art. I, Sec. 8, Clause 8 .................... 17

## PRELIMINARY STATEMENT

The core theme of the Plaintiffs' Complaint is that they are entitled to protect what they consider to be a unique way of marketing insurance products.  They have asserted various causes of action – copyright infringement, breach of contract, state law misappropriation of trade secrets, state law unfair competition, and state law intentional interference with prospective contractual relations – to assert this alleged right, which they say the Defendant The Prudential Insurance Company of America ("Prudential") violated by using the same marketing approach for selling insurance to consumers.

Prudential makes this motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint because absent a patent, the law does not grant to the Plaintiffs an exclusive right to marketing methods.  Because of the superiority of federal copyright and patent law, the Plaintiffs' various state law claims are preempted by federal law and must be dismissed.  Lastly, Prudential also makes this motion because the Complaint fails to contain allegations that would satisfy all of the required elements for their causes of action.  Because Plaintiffs' allegations make clear that they improperly seek copyright protection for functional elements of their products, any

amendment would be futile, and therefore the Plaintiffs should not be given the opportunity to amend their pleadings and the Complaint should be dismissed with prejudice.

## PROCEDURAL HISTORY

Plaintiffs filed their Complaint in this matter on August 1, 2008. By stipulation of the parties, Defendant Prudential was given leave to file its initial pleadings in this matter until September 26, 2008.

## FACTUAL ALLEGATIONS AS PLEADED IN COMPLAINT

Plaintiffs' Complaint alleges that Plaintiffs are engaged in the business of marketing and communications, (Compl. ¶¶ 1-3), and that Prudential is engaged in the business of selling insurance products and financial services in the Commonwealth of Pennsylvania. (Compl. ¶ 4). Plaintiffs claim to have developed a "marketing strategy for insurance and financial services products," (Compl. ¶ 13), that they subsequently embodied in several products (the "businessKillers" package and certain spin-offs) that were distributed in CD-ROM format with accompanying written materials. (Compl. ¶¶ 15, 17, 19). Plaintiffs claim to hold registered copyrights on each product in the businessKillers package as "audiovisual" or "text and audiovisual" materials. (Compl. ¶¶ 16, 18, 20).

Plaintiffs also allege that use of any of the businessKillers products required the acceptance of a licensing agreement. (Compl. ¶ 28).

Plaintiffs claim that they marketed these products to "independent insurance agents, financial and insurance marketing firms, financial planners, and major insurance companies," (Compl. ¶ 21), including Defendant Prudential. (Compl. ¶ 23). According to the Complaint, any user of the Plaintiffs' products was required to consent to a "clickwrap" Licensing Agreement prior to accessing the substantive portions of the product. (Compl. ¶ 27).

Plaintiffs allege that they demonstrated their products to Prudential on several occasions but that no formal business relationship was ever entered into. (Compl. ¶¶ 24, 32). Defendant Prudential allegedly sought to distribute Plaintiffs' products to "over 1,000 agents/affiliates" of Prudential. (Compl. ¶29). According to the Complaint, Prudential subsequently produced and distributed a series of products similar in concept to Plaintiffs' businessKillers package, which Prudential entitled "Tipping Points™." (Compl. ¶¶ 33, 36). The Tipping Points™ program is allegedly similar to Plaintiffs' products because it contains the following elements, also purportedly incorporated into Plaintiffs' products:

- The use of a "CD-ROM with accompanying printed materials."

- The use of a "self-assessment written test booklet to ascertain each owner's risk . . . in a yes/no format."

- A focus "on nearly identical topics/discussion points for each video-vignette."

- The use of a "subject-matter expert/consultant after each vignette to present potential solutions to the business-owner."

- Positioning as an "executive briefing rather than as a seminar."

- Use of "emotionally charged video vignettes illustrating typical mistakes of business owners."

- Use of "substantially similar verbiage" in the online brochure.

- Use of a "substantially similar . . . format offering."

- Permitting customization to reflect a given audience or person's name.

- Permitting customization of topic order.

- Use of "substantially similar dialogue" in the video vignettes.

- Use of a disabling device that stops the product from functioning after a given number of days.

- Similar market positioning.

(Compl. ¶ 35).

As a result of Prudential's distribution of the Tipping Points™ program, Plaintiffs have alleged that Prudential infringed upon Plaintiffs' federal copyrights.

(Compl. ¶¶ 37-40).  Plaintiffs have also alleged state law claims that Prudential breached the licensing agreement contained within Plaintiffs' products, for misappropriation of trade secrets, unfair competition, and intentional interference with prospective contractual relations. (Compl. ¶¶41-58).

**ARGUMENT**

**I.   <u>STANDARD OF REVIEW.</u>**

In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008).  However, the Supreme Court recently clarified that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964 (2007).

"Factual allegations must be enough to raise a right to relief above the speculative level," and must at a

minimum "suggest" the required elements of a claim such that the claim is plausible. <u>Id</u>. at 1965 (cited in <u>Phillips</u>, 515 F.3d, <u>supra</u> at 234. "Courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint. . . . [L]egal conclusions in the form of factual allegations may not benefit from the presumption of truthfulness." <u>In re Rockefeller Ctr. Props., Inc. Secs. Litig.</u>, 311 F.3d 198, 215 (3d Cir. 2002)(overruled on other grounds, <u>Phillips</u>, 515 F.3d, <u>supra</u> at 233).

The Supreme Court's decision in <u>Twombly</u> is of particular relevance to the Plaintiffs' Complaint, which often fails to do any more than just recite the required elements of a cause of action. <u>Twombly</u> holds that this is not sufficient, as a plaintiff must make a "showing" of an entitlement to relief pursuant to Fed. R. Civ. Proc. 8(a)(2) by asserting factual allegations that would at a minimum suggest the proscribed conduct. <u>Phillips</u>, 515 F.3d, <u>supra</u> at 233 (explaining <u>Twombly</u>, 127 S.Ct. at 1964-65). Applying <u>Twombly</u> in a copyright context, a Plaintiff alleging infringement based on the substantial similarity of Defendant's work must provide a direct comparison from which one could conclude that the works were in fact

"substantially similar." <u>Phillips v. Murdock</u>, 543 F. Supp. 2d 1219, 1226 (D. Haw. 2008).

## II. <u>PLAINTIFFS' CLAIMS FOR COPYRIGHT INFRINGEMENT FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.</u>

Plaintiffs' first asserted cause of action is for copyright infringement under the Federal Copyright Act, 17 U.S.C. § 101 *et seq.* (Compl. ¶¶37-40). In order to assert a claim for copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." <u>Feist Publications, Inc. v. Rural Telephone Svcs., Inc.</u>, 499 U.S. 340, 361 (1991). Moreover, because copying can only rarely be proven through direct evidence, a Plaintiff must typically prove the copying through indirect evidence that "the defendant had access to the allegedly infringed copyrighted work and that the allegedly infringing work is substantially similar to the copyrighted work." <u>Whelan Assoc. v. Jaslow Dental Lab, Inc.</u>, 797 F.2d 1222, 1232 (3d Cir. 1986).

Plaintiffs' Complaint attempts to seek copyright protection for marketing approaches that are not entitled to such protection, and therefore the Complaint fails to allege "copying of constituent elements that are original." The Complaint also fails to provide factual allegations to

support the claim that elements of Defendant's products are "substantially similar."

### A. Plaintiffs' Complaint does not allege infringement of "original" elements protected by the Copyright Act.

The Copyright Act (the "Act"), by its terms, explains why the Plaintiffs do not have a copyright infringement claim on their self-proclaimed unique approach to marketing insurance. The Act states that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 15 U.S.C. § 102(b). In other words, any element of a protected work that is an "idea, procedure, [or] process" must necessarily fail the requirement that an allegedly infringed item be "original."

In their Complaint, Plaintiffs allege that Prudential's Tipping Points™ products infringe Plaintiffs' product because Tipping Points contains the following elements, also allegedly present in Plaintiffs' product:

a) The use of a "CD-ROM with accompanying printed materials."

b) The use of a "self-assessment written test booklet to ascertain each owner's risk . . . in a yes/no format."

8

c) A focus "on nearly identical topics/discussion points for each video-vignette."

d) The use of a "subject-matter expert/consultant after each vignette to present potential solutions to the business-owner."

e) Positioning as an "executive briefing rather than as a seminar."

f) Use of "emotionally charged video vignettes illustrating typical mistakes of business owners."

g) Use of "substantially similar verbiage" in the online brochure.

h) Use of a "substantially similar . . . format offering."

i) Permitting customization to reflect a given audience or person's name.

j) Permitting customization of topic order.

k) Use of "substantially similar dialogue" in the video vignettes.

l) Use of a disabling device that stops the product from functioning after a given number of days.

m) Similar market positioning.

(Complaint at ¶ 35).

With the exception of item g) above, regarding the allegation of "substantially similar verbiage" and item k) above, regarding the allegation of "substantially similar dialogue," all of the allegedly infringed-upon elements are elements that the Copyright Act explicitly does not protect. This is because they are each an "idea,

procedure, process, system, method of operation, concept, principle, or discovery." 15 U.S.C. § 102(b). As such, they cannot be "constituent works that are original" as required to sustain a claim for copyright infringement.

The Plaintiffs tacitly admit the lack of copyright protection for almost all of their copyright infringement allegations by acknowledging that their products are copyrighted solely as "[t]ext and audiovisual material" or as "audiovisual work." (Compl. ¶¶ 16, 18, 20). As such, the copyright protections by definition cannot extend beyond the text or audiovisual presentation of Plaintiffs' products. Yet the Plaintiffs fail to allege any way in which Prudential's products rely on the same or substantially similar "text and audiovisual material." See Murdock, 543 F. Supp.2d, supra at 1226 (dismissing Complaint where Plaintiff did not "identify any specific text in [Plaintiff's] work that is copied in [Defendant's] publications.").

> **1. The majority of Plaintiffs' copyright allegations pertain to functional elements of their product that are not protected by the Copyright Act.**

The Third Circuit has stated that "[i]t is axiomatic that copyright does not protect ideas, but only expressions of ideas." Whelan Assoc., Inc. v. Jaslow Dental Laboratory, Inc., 797 F.2d 1222, 1234 (3d Cir. 1986). The

"purpose or function of a work or literary device is part
of that device's 'idea.'"   Id. at 1236.   Anything that is
"not necessary to [the] purpose or function would be part
of the expression of the idea."   Id.   "One work does not
infringe another if their similarity results from the
limits on expression. . . ."   Kepner-Tregoe, Inc. v.
Carabio, 203 U.S.P.Q. (BNA) 124, *34 (E.D. Mich. 1979).

Applying the standard laid out by the Third Circuit in
Whelan, it is clear that the Plaintiffs cannot make out a
claim for copyright infringement.   The Plaintiffs
improperly seek to protect the "purpose or function" of
their product, which Plaintiffs acknowledge was to "educate
and emotionally motivate customers via audiovisual
vignettes designed to demonstrate how a lack of planning
could put the potential customers' business and personal
finances at risk."   (Compl. ¶ 15).   It is these very
purposes that form the basis for the Plaintiffs'
infringement claim, in direct contravention of settled
federal law which holds that to grant such protection would
improperly enforce a "monopoly on the problem-solving
process [they] developed."   Kepner-Tregoe, 203 U.S.P.Q.
(BNA), supra at 23-24.

The Complaint is filled with allegations that
erroneously focus on the purpose or function of the

Plaintiffs' product.    For  example,  according  to  the Complaint, the purpose of Plaintiffs' product was to:

> "educate  and  emotionally  motivate  customers  via audiovisual  vignettes  designed  to  demonstrate  how a  lack  of  planning  could  put  the  potential customers'  business  and  personal  finances  at risk.   The  product  was  developed  to  identify potential problems for the customers, magnify the problems with relatable consequences, and provide an  immediate  solution  through  a  financial consultant."

(Compl.  ¶  15).    Additionally,  the  product's  accompanying written  materials  were  designed  "to  identify  for  both  the customer  and  the  sales  agent  the  insurance  and  financial services  needs  of  the  customer."    (Id.).    Further,  the product was "distilled down to six critical topics found to resonate with business owners including business valuation, succession   planning,   disability   income   protection, retirement  planning,  asset  allocation  and  tax  strategies." (Id.).  Plaintiffs  improperly  seek  copyright  protection  for these  purposes  or  functions  of  their  product  rather  than the  way  in  which  those  purposes  or  functions  are  expressed. This  is  in  direct  contravention  of  the  fundamental  axiom that   "copyright   does   not   protect   ideas,   but   only expressions  of  ideas"  and  that  the  "purpose  or  function  of a  work  or  literary  device  is  part  of  that  device's  'idea.'" Whelan Assoc., 797 F.2d, supra at 1234-36.

**2.  Plaintiffs seek copyright protection for elements that are the exclusive province of patent law.**

Plaintiffs' Complaint makes clear that they in actuality seek to protect "a unique sales approach that redefined how insurance and financial products could be presented to business-owners in an educationally focused, non-product based sales approach." (Compl. ¶15).  This is a wholly inappropriate use of the Copyright Act because a "sales approach" is clearly an "idea, procedure, process, system, method of operation, concept, principle, or discovery . . ." explicitly not protected by the Copyright Act.  15 U.S.C. § 102(b).  Protection for such elements is the exclusive province of patent law, and Plaintiffs have failed to allege the existence of a patent for their products.  See, e.g., Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 150 (1989).

**3.  Plaintiffs' allegations of "substantial similarity" between the verbiage of the online brochures and vignette dialogue are of only marginal importance to Plaintiffs' Complaint.**

The determination regarding infringement based on "substantial similarity between the verbiage in the online brochures and vignette dialogue" (Compl. ¶ 35) would require a comparison of the allegedly infringing products with Plaintiffs' products.  However, in this case, it does not appear that the verbiage in the descriptive brochure

and vignette dialogues are what Plaintiffs seek primarily
to protect.    In order for there to be a finding of
infringement, the similarity must "relate to a substantial
portion of plaintiffs' work – i.e., matter which is of
value to plaintiffs."   <u>Atari, Inc. v. North American
Phillips Consumer Electronics Corp.</u>, 672 F.2d 607, 619 (7th
Cir. 1982).   In this case, the allegations in the Complaint
make clear that Plaintiffs' work on this product, and what
Plaintiffs seek to protect, was almost entirely the method
they developed for presenting certain financial
information.

Plaintiffs dedicate only two sentences in their entire
Complaint to these specific allegations, and provide no
factual allegations as to how these elements are
"substantially similar."  (Compl. ¶ 35(g) and (k).   It is
therefore clear that these allegations are of only marginal
importance to Plaintiffs and the subject matter thereof is
not "of value" to them.  <u>Atari</u>, 672 F.2d, <u>supra</u> at 619.

**B.   Plaintiffs' Complaint fails to allege facts
supporting the allegation that Defendant's
products contain "substantially similar" verbiage
or dialogue.**

A review of Plaintiffs' allegations that the online
brochure verbiage and vignette dialogue are "substantially
similar" (Compl. ¶ 35(g) and (k)) demonstrates that those

14

allegations are far too generic to withstand a motion to dismiss.[1] Plaintiffs' Complaint alleges in extremely general fashion that Prudential used "substantially similar" verbiage in the online brochures, and "substantially similar dialogue" in the video vignettes. (Compl. ¶ 35(g),(k)). The Complaint fails to provide any examples of how the dialogue and verbiage are "substantially similar," and also fails to attach copies of the products to the Complaint.

Because "substantial similarity" is itself an element of a copyright infringement claim, Whelan, 797 F.2d, supra at 1232, Plaintiffs' Complaint must provide some grounds for the conclusion that the dialogue and verbiage are "substantially similar." Twombly, 127 S.Ct., supra at 1964. Alleging substantial similarity, without more, is insufficient and is merely a "formulaic recitation of the elements of a cause of action" that cannot withstand a motion to dismiss. Id.

At least one other Court has had the opportunity to consider similar allegations to those raised here by Plaintiffs since the Supreme Court's decision in Twombly.

---

[1] With respect to the online product brochure, it is important to note that the Plaintiffs have failed to allege that they own a copyright for that brochure. At least with respect to this particular allegation, therefore, Plaintiffs' Complaint fails to meet the threshold requirement that a party allege that it owns a valid copyright.

In that case, the District Court of Hawaii dismissed a copyright infringement claim on precisely the grounds requested here by Prudential, ruling that a mere statement that works were "substantially similar" is insufficient to survive a motion to dismiss, and must be supported by some form of direct comparison between the allegedly substantially similar elements of the works. Murdock, 543 F. Supp. 2d, supra at 1226.    The Court in Murdock specifically concluded that "[t]he failure to delineate the text that is the basis of the copyright claim makes it impossible for Defendants to answer or to defend against Plaintiff's claim." Id. at 1227.

**III.  ALL OF PLAINTIFFS' STATE LAW CLAIMS FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.**

   **A.  All of the state law claims are preempted by federal law.**

In addition to their Copyright Act claim, Plaintiffs have asserted four state law claims for breach of contract, misappropriation of trade secrets, unfair competition, and intentional interference with prospective contractual relations.  All of these causes of action are thinly-veiled efforts to assert the same flawed copyright infringement claim and should be dismissed because they are preempted by the federal Copyright Act or federal patent law.

Plaintiffs' state law claims are based on allegations that Prudential "copied" or "substantially copied" various elements of Plaintiffs' products through manufacturing and distributing the Tipping Points™ program. (See Compl. ¶¶ 44-58).   The Supreme Court has made clear that "state regulation of intellectual property must yield to the extent that it clashes with the balance struck by Congress in our patent laws." Bonito Boats, 489 U.S., supra at 152. Protection against "copying" or "substantial copying" of a product is the sole and exclusive province of federal patent and copyright law.   See SNA, 51 F. Supp. 2d, supra at 567 ("Patent law gives protection against copying, but trade secret law does not.").

As previously noted, the allegedly copied elements of Plaintiffs' products are almost entirely functional elements such as the use of a CD-ROM, the use of an assessment test to ascertain risk, and the fact that the products are individually customizable.   Generally speaking, protection of rights in functional aspects of a product, i.e., the "useful Arts," is the sole province of federal patent law. U.S. Const. Art. I, Sec. 8, Clause 8.

To the extent Plaintiffs' state law claims are based on copying of non-functional aspects of their products, those claims are preempted by the Copyright Act.   "A state

17

cause of action is preempted by federal copyright laws if the subject matter of the state-law right falls within the subject matter of the copyright laws and the state-law right asserted is equivalent to the exclusive rights protected by federal copyright law." <u>Kregos v. Associated Press</u>, 3 F.3d 656, 666 (2d Cir. 1993); <u>see also</u> 17 U.S.C. § 301(a)(all rights "in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright" are governed exclusively by the federal Copyright Act.)

A state law intellectual property claim can withstand a motion to dismiss only if it requires proof of an "additional element." <u>Kregos</u>, 3 F.3d, <u>supra</u> at 666. No such "additional element" exists with regard to Plaintiffs' state law claims in this matter, especially in light of the Plaintiffs' inability to meet the heightened pleading standards set forth in <u>Twombly</u>.

**B. The Plaintiffs have failed to properly plead the state law claims.**

The Plaintiffs' state law claims should also be dismissed because those claims simply fail to make out a claim for relief.

18

**1.   Plaintiffs' Complaint fails to state a claim for breach of contract.**

The Second Count of Plaintiffs' Complaint alleges that Prudential breached a "clickwrap" licensing agreement that appeared on a user's computer screen prior to viewing the content of Plaintiffs' product.   In pertinent part, this alleged agreement stated that Plaintiffs "reserve[] any and all right, title and interest in and to the Software and...trademarks, product names, documentation, and support materials. . . . You may not copy or reproduce in any form the user documentation provided with the software." (Compl. ¶ 27).

This Count fails to state a claim upon which relief may be granted because the Complaint contains insufficient factual allegations to conclude that Prudential breached this licensing agreement.

**a.   The Complaint fails to allege the existence of a valid agreement.**

The Complaint does not adequately allege that Prudential ever accepted the licensing agreement, and in fact suggests to the contrary that there was no acceptance by Prudential.   As the Complaint states, the Plaintiffs conducted numerous presentations of their product to Prudential, (Compl. ¶ 24), suggesting that it was the Plaintiffs, not Prudential, who opened up the program for

demonstration purposes.   Nowhere does the Complaint allege that Prudential in fact accessed Plaintiffs' product outside the context of these demonstrations.

        **b.   The Complaint provides no basis to conclude Prudential infringed upon Plaintiffs' ownership interests.**

The Complaint fails to allege any facts to suggest that Prudential infringed upon Plaintiffs' "right, title, and interest in and to the Software," or that Prudential "cop[ied] or reproduce[d] . . . the user documentation provided with the Software." Instead, as discussed *infra,* the Complaint merely alleges that Prudential used a similar marketing approach and created a product that directly competed with Plaintiffs' product and served a similar purpose. (See Compl. ¶¶ 35, 42). This cannot form the basis of a breach of contract action against Prudential as there is no allegation that Prudential agreed not to compete with the Plaintiffs.

The Plaintiffs' breach of contract claim is premised on the same theme that pervades the copyright infringement claim: Plaintiffs had a unique marketing approach to insurance that no one, including Prudential, was permitted to emulate. (Compare Compl. ¶ 35 with Compl. ¶ 42). The breach of contract claim duplicates the same type of

formulaic recitation regarding a vague allegation of "substantially copying."  (Compl. ¶ 42).

Notably, the breach of contract claim makes no allegation that Prudential violated Plaintiffs' ownership interest in "trademarks, product names, documentation, and support materials" related to their products.  This is significant because the clickwrap agreement, if accessed, is confined solely to the Plaintiffs' ownership in these property rights. (Compl. ¶ 27).

        **c.   The breach of contract allegations are prohibited "formulaic recitations."**

The Plaintiffs' remaining breach of contract claims should likewise be dismissed because of their failure to go beyond mere formulaic recitations.   The allegation regarding use of Plaintiffs' product for purposes other than workshop presentations (Compl. ¶42(f)) is devoid of any factual allegations to suggest that Prudential ever used Plaintiffs' product for purposes other than workshop presentations, or even that the licensing agreement would prohibit all uses outside of workshop presentations.

In contravention of the Supreme Court mandate set forth in <u>Twombly</u>, the Plaintiffs also fail to provide any comparison to suggest that the user documentation for the products is similar, much less "substantially cop[ied]."

(See Compl. ¶42(g)).  Instead, their Complaint only broadly recites naked allegations that the user documentation was "substantially cop[ied]."

**2.  Plaintiffs' allegations of misappropriation of trade secrets fail to state a claim upon which relief may be granted.**

The Third Count of Plaintiffs' Complaint alleges a state common law claim that Prudential misappropriated Plaintiffs' trade secrets in creating and distributing the allegedly competing Tipping Points™ software.  Under Pennsylvania law, the elements of the tort of misappropriation of trade secrets are: "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff." Moore v. Kulicke & Soffa Indus., Inc., 318 F.3d 561, 566 (3d Cir. 2002).  The Plaintiffs' Complaint fails to allege these elements sufficiently.

**a.  There is no trade secret.**

In order to state a claim for misappropriation of a trade secret, it is self-evident that there must be a valid "trade secret" to be misappropriated.  Here, the Complaint fails to allege facts that would establish the existence of a trade secret.

A "trade secret" under Pennsylvania law exists when there is "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Prudential v. Stella, 994 F. Supp. 318, 323 n. 2 (E.D. Pa. 1998). Plaintiffs claim without more that Plaintiffs' products were trade secrets unto themselves. (Compl. ¶ 45)("The businessKillers package . . . constitutes a trade secret under Pennsylvania law."). The fact that Plaintiffs have claimed that "the businessKillers package . . . constitutes a trade secret under Pennsylvania law" is itself fatal to the claim for misappropriation of trade secrets. This is because in order for a court to find the existence of a trade secret, the secret must "derive independent economic value . . . from not being generally known." Stromback v. New Line Cinema, 384 F.3d 283, 305 (6th Cir. 2004).

Plaintiffs' product could have "independent economic value" only to the extent Plaintiffs sold the product to the public, or at least through some other form of broad dissemination. It is self-evident that Plaintiffs sought to sell their product to a wide swath of the financial industry. (See Compl. ¶21). In such an instance, there can be no trade secret. Stromback, 384 F.3d, supra at 305

(finding no trade secret could exist in a plaintiff's screenplay because it could not have "independent economic value" without a broad dissemination).

Underscoring the incongruity of calling the products themselves trade secrets, Plaintiffs' Complaint acknowledges that Plaintiffs widely marketed their products to "independent insurance agents, financial and insurance marketing firms, financial planners, and major insurance companies." (Compl. ¶ 21).

It is implausible that Plaintiffs could have marketed their product to potential customers without disclosing the specific, functional concepts they now claim Prudential misappropriated, to wit: "an emotionally-based, non-product focused sales approach," a "self-assessment tool . . . to analyze the business owner's risk and define his/her needs," "emotionally charged video vignettes aimed at educating the consumer," and the use of "six distilled critical topics found to most resonate with closely held business owners." (Compl. ¶ 45).[2]

_____

[2] Defendant Prudential requests that the Court take judicial notice of the fact that the Plaintiffs widely broadcast their so-called trade secrets on their publicly-accessible "online brochure." (See Certification of Daniel C. Fleming). Plaintiffs' Complaint makes specific allegations regarding the content of their "online brochure." (Compl. ¶ 35(g))(alleging Prudential's "online brochure" is substantially similar to Plaintiffs' "online brochure."). In the context of a motion to dismiss in intellectual property cases, a court is permitted to take judicial notice of such facts without converting the motion into one for summary judgment. See, e.g. Zella v. E.W.

**b.    There is no confidential relationship.**

Plaintiffs' Complaint fails to provide a basis to suggest the existence of a confidential relationship between Plaintiffs and Prudential.    According to the Complaint, "in June, 2005, Plaintiffs began marketing the businessKillers package to Prudential." (Compl. ¶ 23). Thus, according to the terms of the Complaint, the relationship between Plaintiffs and Prudential arose out of an unsolicited disclosure of at least some essential elements of the businessKillers package.    The U.S. District Court for the Eastern District of Pennsylvania has noted that a "[g]ratuitous, unsolicited disclosure of information does not impose upon a recipient a contractual or fiduciary obligation not to disclose it."    Block v. Blakely, 2004 U.S. Dist. LEXIS 16920, at *6 (E.D. Pa. Aug. 24, 2004).

**c.    There is no harm.**

Plaintiffs' Complaint also fails to allege that they have suffered harm as a result of Prudential's actions. Although Plaintiffs' Complaint broadly alleges that "Prudential has and continues to distribute Prudential's Tipping Points™ software for free to Plaintiff Lighthouse's potential customers for financial gain," (Compl. ¶ 36), it

---

Scripps Co., 529 F. Supp.2d 1124, 1127 (C.D. Cal. 2007)(following Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994) and Federal R. Evid. 201).

is clear from the Complaint that the "potential customers" are in fact Prudential's own agents and employees. (Compl. ¶ 29)(Prudential "expected to distribute the copyrighted software and materials contained in the businessKillers package to over 1,000 agents/affiliates.")  Plaintiffs do not allege that Prudential distributed or marketed the Tipping Points™ product to outside "independent insurance agents, financial and insurance marketing firms, financial planners, and major insurance companies" with which Plaintiffs sought to do business.  It is implausible that Plaintiffs could have suffered harm within the meaning of a misappropriation of trade secrets claim when the sole business they may have lost due to Prudential's actions was the prospective business of Prudential itself.

    **3.    Plaintiffs' allegations of unfair competition fail to state a claim upon which relief may be granted.**

Plaintiffs seek protection under the law of unfair competition by broadly alleging that Prudential "substantially copied the format, design, and unique marketing strategy of Plaintiff Lighthouse's businessKillers package" and that Prudential subsequently distributed the Tipping Points™ product for free to Plaintiffs' potential customers.  (Compl. ¶ 51). Plaintiffs do not allege that Prudential has sought to

"pass off" Prudential's products as if they were Plaintiffs' products, but rather that Prudential has sought to market a substantially similar product under Prudential's "Tipping Points™" label. (Compl. ¶ 48).

In order to state a claim for unfair competition, a Plaintiff must allege the existence of a "deception practiced in 'passing off' the goods of one for that of another." University Orthopedics, 706 A.2d, supra at 870. As such, the core of a claim for unfair competition is whether a competing product "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a).

In this case, Plaintiffs have utterly failed to allege how Prudential's Tipping Points™ product would be likely to cause confusion as to its source. Plaintiffs' Complaint does not allege that Prudential labeled its Tipping Points™ product in such a way as to suggest that it was actually Plaintiffs' product. In short, Plaintiffs' Complaint contains no basis to conclude that Prudential's product would create any kind of "confusion as to source" amongst consumers. Bonito Boats, 489 U.S., supra at 155.

**4. Plaintiffs' allegations of interference with prospective contractual relations fail to state a claim upon which relief may be granted.**

The final allegation contained in Plaintiffs' Complaint claims that Prudential's creation and distribution of the Tipping Points™ software gave rise to a Pennsylvania state law claim for intentional interference with prospective contractual relations. (Compl. ¶¶ 55-58). "To prevail on a claim of intentional interference with prospective contractual relations under Pennsylvania law, [a Plaintiff] must show the following: (1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct." Kachmar v. Sungard Data Sys., 109 F.3d 173, 184 (3d Cir. 1997).

**a. There are no "prospective contractual relations."**

Plaintiffs' Complaint is devoid of any allegation of a "prospective contractual relation." To qualify as a "prospective contractual relation," a Plaintiff must possess an "objectively reasonable probability that a contract will come into existence . . . something more than a 'mere hope.'" Kachmar, 109 F.3d, supra at 184. As such,

a Plaintiff alleging interference with prospective contractual relations must allege that they at least have "reached an understanding or agreement with the plaintiff to establish a prospective business relationship." Meissner Chevrolet Geo-Oldsmobile, Inc. v. Rothrock Chevrolet, Inc., 2007 U.S. Dist. LEXIS 78744, at *8 (E.D. Pa. Oct. 24, 2007)(quoting Diamond Triumph Auto Glass, Inc. v. Satellite Glass Corp., 441 F. Supp. 2d 695, 716 (M.D. Pa. 2006).

Plaintiffs' Complaint alleges no parties with whom Plaintiffs reached an understanding to enter into a contract; nor does it allege any "current dealings from which there is a reasonable probability that a contract will arise." Instead, Plaintiffs' Complaint makes only the blanket assertion that Prudential distributed its product to "Plaintiff Lighthouse's potential customers." (Compl. ¶ 56). The Complaint contains no basis to suggest that Plaintiffs had anything beyond a "mere hope" of entering into an agreement with these unspecified "potential customers." Thus, on this basis alone, Plaintiffs have failed to state a claim for intentional interference with prospective contractual relations. Instead, they have engaged in a mere "formulaic recitation of the elements of

29

a cause of action. . . ." <u>Twombly</u>, 127 S.Ct., <u>supra</u> at 1964.

The Plaintiffs' expectations in this regard were nothing more than wishful thinking, because the Complaint makes clear that the intended audience of which they were deprived was Prudential's own agents. Indeed, the Complaint specifically states that Prudential "expected to distribute the copyrighted software and materials contained in the businessKillers package to over 1,000 agents/affiliates." (Compl. ¶ 29).

### b. Prudential was privileged to engage in the actions alleged by the Plaintiffs.

Under Pennsylvania law, "[o]ne who, having a *financial interest* in the business of a third person[,] intentionally causes that person not to enter into a prospective contractual relation with another, does not interfere improperly with the other's relation if he (a) does not employ wrongful means and (b) acts to protect his interest from being prejudiced by the relation." <u>Schulman v. J.P. Morgan Inv. Management</u>, 35 F.3d 799, 809 (3d Cir. 1994)(emphasis added). Applying this standard, it is clear that Prudential possessed a "financial interest in the business" of its own agents and affiliates and had every right to protect the relationship with its own agents.

The Third Circuit, applying Pennsylvania law, has previously ruled that a parent company's interest in the financial stability of its subsidiaries creates a need to avoid situations where the parent and its subsidiaries are working at cross-purposes. <u>Advent Sys. v. Unisys Corp.</u>, 925 F.2d 670, 673 (3d Cir. 1991).  As such, a parent company in such a situation is privileged to engage in a "disruption of negotiations," and thereby cannot commit the tort of intentional interference with prospective contractual relations. <u>Id.</u>  Thus, even if Plaintiffs' allegations were true, Prudential would be privileged to distribute its competing product to its agents and affiliates – regardless of whether Plaintiffs had a reasonable expectation of entering into a contract with those agents and affiliates.

**IV.  PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE.**

Prudential requests that the Court dismiss the Complaint with prejudice, and not permit the Plaintiffs to re-plead or otherwise amend their pleadings.  Denial of an opportunity to re-plead or amend is appropriate under Fed. R. Civ. P. 15(a) where amendment of the pleadings would be "futile." <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000)(citing <u>In re Burlington Coat Factory Sec. Litig.</u>, 113

F.3d 1410, 1434 (3d Cir. 1997)).   Amendment is "futile" when doing so would nonetheless still fail to state a claim upon which relief could be granted and therefore "would not cure the deficiency."  Ibid.

     In this case, it is clear that Plaintiffs cannot cure the deficiencies in their Complaint even if they are permitted to amend their pleadings or re-plead.   As discussed, Plaintiff's copyright infringement and state law claims improperly seek protection for functional elements of Plaintiffs' products that are not protectible under either copyright law or the terms of the alleged licensing agreement.   In fact, all of Plaintiffs' state law claims are entirely preempted by federal law.

     Even if Plaintiffs' state law claims were not preempted, numerous factual allegations in the Complaint directly undermine Plaintiffs' asserted causes of action. Specifically, Plaintiffs' Complaint acknowledges that Plaintiffs did not maintain their product as a trade secret by admitting that Plaintiffs marketed the product to "independent insurance agents, financial and insurance marketing firms, financial planners and major insurance companies."   (Compl. ¶ 21).   Similarly, Plaintiffs acknowledge that Prudential marketed the Tipping Points™ product as Prudential's own, (Compl. ¶ 33), and therefore

cannot amend their Complaint to properly state a claim for unfair competition, which requires a Defendant to "pass off" its goods as if they were Plaintiffs' goods. University Orthopedics, 706 A.2d, supra at 870. Finally, Plaintiffs acknowledge that the "potential customers" of which they were deprived were Prudential's own agents and affiliates, (Compl. ¶ 29); thus, they cannot conceivably state a claim for intentional interference with prospective contractual relations because Prudential was clearly privileged to protect its interests in its agents and affiliates. Advent Systems, 925 F.2d, supra at 673.

**CONCLUSION**

For the foregoing reasons, Plaintiffs have failed to state any claims upon which relief may be granted.  As a result, this Court should grant Defendant Prudential's motion to dismiss with prejudice under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,


s/Daniel C. Fleming___
Federal Bar No. DF3872
Email: dfleming@wongflmeing.com
Validation Signature Code: DCF8109

**WONG FLEMING, P.C.**
821 Alexander Road, Suite 150
P.O. Box 3663
Princeton, New Jersey 08540
Tel: (609) 951-9520
Fax: (609) 951-0270
Attorneys for Defendant
The Prudential Insurance Company
of America


Dated: September 25, 2008